**FILED**

**July 12, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:49 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **DEBBIE MORGAN,** | ) | **Docket No.: 2016-08-0270** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | |
| **MACY'S,** | ) | **State File No. 63707-2015** |
| **Employer,** | ) | |
| | ) | |
| **and** | ) | |
| **MACY'S CORPORATE SERVICES,** | ) | **Judge Allen Phillips** |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on June 7, 2016, upon the Request for Expedited Hearing filed by Debbie Morgan pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Morgan requests that the Court order Macy's to pay for a surgical procedure recommended by the authorized physician. Macy's contends she is not entitled to the requested surgery because utilization review determined the surgery is not medically necessary.[1] Accordingly, the central legal issue is whether Ms. Morgan has established entitlement to the surgery despite utilization review denial. For the reasons set forth below, the Court finds Ms. Morgan is entitled to the recommended surgery.[2] Subsequent to the Expedited Hearing, Macy's filed a "Motion to Expand The Scope Of The Dispute Certification Notice To Include Defense For Idiopathic Injury." The Court denies the Motion for the reasons set forth below.

---

[1] Macy's listed compensability as an issue in the Dispute Certification Notice but, at the hearing, stipulated the injury was compensable.

[2] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

1

## History of Claim

Ms. Morgan is a fifty-four-year-old resident of Shelby County, Tennessee, who works for Macy's as a sales associate. On July 9, 2015, she fell on a concrete floor, "jamming" her right shoulder. She felt immediate pain in both her right shoulder and her neck. Macy's provided medical benefits, and the parties agree Dr. Samuel Schroerlucke is the authorized treating physician.

Ms. Morgan first saw Dr. Schroerlucke on October 27, 2015, and reported "right arm and shoulder pains" and "neck pain and right upper extremity numbness that runs down into her first three fingers." (Ex. 1 at 1.)[3] Dr. Schroerlucke noted she had tried "a steroid pack with no relief" and "physical therapy for three weeks which gave her minimal relief." *Id.* On examination, he noted a "positive Spurling's to the right" and "severe pain running down her right arm" if she extends her neck. *Id.* Dr. Schroerlucke recommended an MRI. *Id.*

On November 24, 2015, Dr. Schroerlucke noted the MRI "reveal[ed] right C4-C5 and C5-C6 foraminal stenosis." (Ex. 1 at 4.) He recommended an epidural steroid injection (ESI) and an EMG of the right upper extremity. *Id.* When Ms. Morgan returned on January 5, 2016, Dr. Schroerlucke noted the EMG revealed "no abnormalities." He also stated, "I think that her symptoms are coming from her cervical spinal stenosis." *Id.* at 6. On January 26, 2016, Ms. Morgan reported the ESI was "not helping," but Dr. Schroerlucke wanted to "wait this injection out and have her come back . . . in two weeks." *Id.* at 8. He further noted that, "[i]f she continues to have a lot of symptoms at that time I will likely offer her a C4-C6 ACDF." *Id.*

On February 2, 2016, Ms. Morgan returned "very frustrated with how much pain she [was] having" and was "very interested in surgical intervention." (Ex. 1 at 9.) On examination, she had a "decreased right bicep reflex." *Id.* Dr. Schroerlucke diagnosed C4-C6 stenosis and right upper extremity radiculopathy. He stated:

> At this point I have recommended a C4-C6 ACDF. . . . We did talk about the fact that she had seen me in the past for a similar complaint. However, she says she was completely asymptomatic prior to her work injury. Therefore, this is an aggravation of a pre-existing asymptomatic condition that her work contributed more than 50% of the problem to.

Macy's requested UR review of the recommended surgery and, on February 24, 2016, Genex Services issued a report from Dr. Robert G. Winans, a "Board Certified Orthopedic Surgeon" licensed in Tennessee. Dr. Winans opined the "C4-6 ACDF" was

---

[3] The Court numbered the pages of Exhibit 1 sequentially in the lower right corner of each page. The Court reminds the parties, for future reference, that Rule 0800-02-21-.16(6)(c) requires the parties to number the medical records submitted as evidence.

"not authorized" pursuant to the criteria of the "ODG treatment guidelines" because, in pertinent part:

> Nothing definitely objectively abnormal was described as being present neurologically. There is no indication of the presence of spinal instability. There is no definite indication of the presence of a surgical lesion – some degenerative disc changes in the cervical spine are noted however there are no described objective signs or symptoms that can be directly related to these imaging findings. The electrodiagnostic test was negative for any radiculopathy. Guidelines state that there must be evidence of radicular pain and sensory symptoms in a cervical distribution that correlate with the involved cervical level or presence of a positive Spurling test. . . . Without a demonstration of spinal instability or objective neurological deficits including reflex depression, objective motor weakness or dermatomal sensory depression that correlate with imaging findings or distinct imaging study evidence of a surgical lesion and without attempting to resolve the problem nonsurgically in an intensive spinal rehabilitation program guidelines would not support proceeding with cervical fusion surgery.

(Ex. 2 at 1-2.)

Dr. Schroerlucke noted the denial on March 15, 2016, and recorded Ms. Morgan's symptoms were unchanged. She had a "positive Spurling's to the right and a decreased right biceps reflex." (Ex. 1 at 42.) He stated:

> I had a long discussion with Mrs. Morgan today. She has radiculopathy on the right with stenosis from C4-C6 and neurologic changes including decreased bicep reflexes and a positive Spurling's. . . . I will appeal this decision[4] from her insurance company and I will have her come back and see me in a couple of months depending on the progress of the appeal.

On that same date, Ms. Morgan filed a Petition for Benefit Determination requesting the surgery recommended by Dr. Schroerlucke.

Ms. Morgan was the only witness at the hearing. She testified she continues to work for Macy's. However, she continues to have pain in her neck and right upper extremity and contended conservative treatment has failed. She noted adverse reactions to most pain medications and cannot tolerate their use. She was wearing a "soft" collar and indicated by gesturing that she had pain in her neck, right shoulder, and right arm radiating to her "first two fingers and [her] thumb."

---

[4] There is no indication of an appeal in the record.

3

Ms. Morgan testified it is her understanding that Dr. Schroerlucke has nothing further to offer apart from surgery. Though not "wanting" surgery, she will submit to the C4-C6 ACDF to obtain relief from her current pain and disablement.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

At this Expedited Hearing, Ms. Morgan need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

### *Court's Authority Regarding Utilization Review*

The Court will first address Macy's argument that it lacks authority to consider issues of medical necessity after a UR denial. Concurrently, the Court will analyze Ms. Morgan's argument that statutory provisions exclusively control the outcome.

Ms. Morgan argues Tennessee Code Annotated section 50-6-204(a)(3)(I) (2015) is controlling. That statute provides:

> Following the adoption of treatment guidelines pursuant to § 50-6-124, the presumption of medical necessity for treatment recommended by a physician . . . selected pursuant to this subsection . . . shall be rebuttable only by clear and convincing evidence demonstrating that the recommended treatment substantially deviates from, or presents an unreasonable interpretation of, the treatment guidelines.

Under this statute, Ms. Morgan argued Dr. Schroerlucke is the authorized physician. Thus, his recommendation for surgery is presumed medically necessary and "rebuttable only by clear and convincing evidence" to the contrary. She argued Macy's has not rebutted Dr. Schroerlucke's opinion. Further, Ms. Morgan argued that UR "is there for one purpose," namely, "to deny treatment." If an employer can send a request to UR "to get out of paying medicals," then the presumption of necessity contained in section 50-6-204(a)(3)(I) "would mean nothing." Ms. Morgan admitted she did not appeal the UR denial because, as stated by counsel, "why would I appeal" when "I have an opinion" that surgery is medically necessary?

Macy's countered that, "the purpose of UR is to determine what is medically necessary." Hence, UR is "controlling" and "more powerful" than the opinion of the

4

treating physician. Further, Tennessee adopted the "Official Disability Guidelines (ODG)" as the applicable medical treatment guidelines in workers' compensation cases, effective January 1, 2016. *See* Tenn. Comp. R. & Regs. 0800-02-25-.03(1) (2016). Because of the adoption of the ODG Guidelines, Macy's argued the "role of the Court is now limited" and it may not "second guess questions of medical necessity" lest it "step into the shoes" of medical experts. *See* Employer's Brief at 3. In effect, the Court's authority is limited, by Macy's assessment, to "ensur[ing] that the Employer and its UR agent have complied with the requirements imposed upon it" pursuant to the Guidelines. *Id.* at 4. Macy's concluded that, because Ms. Morgan did not appeal the denial to the Medical Director, the UR determination is final.

The Court respectfully disagrees with Macy's position. Instead, the Court finds it has authority to review the medical evidence in this case and determine whether it supports a finding that Ms. Morgan is entitled to the recommended surgery.

In so finding, the Court notes it has "original and exclusive jurisdiction over all contested claims for workers' compensation benefits when the date of the alleged injury is on or after July 1, 2014." Tenn. Code Ann. § 50-6-237 (2015). Further, the Court recognizes its statutory authority under Tennessee Code Annotated section 50-6-238(a)(3), "to hear and determine claims for compensation, to approve settlements of claims for compensation, to conduct hearings, and to *make orders, decisions, and determinations.*" (Emphasis added.) Accordingly, the Court finds it has statutory power to review the medical evidence in this case. To hold otherwise would deprive Ms. Morgan, or any party for that matter, of a hearing to determine issues regarding medical necessity.

As pointed out above, Tennessee Code Annotated section 50-6-204(A)(3)(I) provides a treating physician's opinion regarding medical necessity may be rebutted only by clear and convincing evidence. If this Court had no authority to hear issues of medical necessity, then a party would have no avenue to argue such an evidentiary issue and section 50-6-204(A)(3)(I) would be rendered meaningless. This Court has a duty to construe a statute so that no part will be rendered inoperative, superfluous, void, or insignificant. *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002).

Further, this Court finds the common law to be instructive. In *Kilgore v. NHC Healthcare*, 134 S.W.3d 153 (Tenn. 2004), our Supreme Court addressed an employer's argument that an appeal to the Medical Director was the exclusive remedy to overturn a UR denial. The Court noted such argument was "not supported by the plain and ordinary meaning of section 50-6-124(d)," which reads, then and now, as follows:

> Nothing in this section shall prevent an employer from electing to provide utilization review; however, if the employee, provider or any other party not contractually bound to the employer's utilization review program

5

disagrees with that employer's utilization review, then that employee, provider or other party *shall have recourse* to the commissioner's utilization review program, as provided for in this section.

*Id.* at 158. (Emphasis added.)

The Court found the term "shall have recourse" means a party *may* seek administrative review but, seeking administrative review "does not replace or limit judicial review." *Id.* The statute, by its plain meaning, did not provide that administrative appeal was the "sole or exclusive means of appealing an employer's [UR] decision, nor [did] the statute state that seeking recourse [within the UR system] is a condition to appealing to the court that had jurisdiction" of the case. *Id.*

This Court finds nothing in the current statute that limits *Kilgore's* applicability. To the contrary, the Court notes the current version of Tennessee Code Annotated section 50-6-124(d) reads *verbatim* to the version in effect when the Supreme Court decided that case. Thus, Ms. Morgan might seek review of the UR denial by the Medical Director, but such is not a prerequisite for seeking judicial review in this Court.

Likewise, contrary to Macy's argument, adoption of the ODG Guidelines does not remove the ability of this Court to review the evidence in a given case to determine medical necessity. The current Treatment Guidelines state that the "mechanism for the timely appeal of [guidelines issues are] set forth in Rule 0800-02-06-.07 Appeals." Tenn. Comp. R. & Regs. 0800-02-25-.03(3) (2016). Upon review, the Court finds nothing in the current version of Rule 0800-02-06-.07 that change the process for either UR appeals or of the ability of this Court to consider disputes regarding medical necessity.

Contrary to Ms. Morgan's argument that UR's actual purpose is to thwart care, the Court finds UR is a statutorily prescribed procedure to determine issues of medical necessity. The adoption of the ODG Guidelines does not place UR in the category of roadblock to patient care but, instead is merely a clarification of the criteria a treating physician must delineate in establishing medical necessity. Just as Macy's is incorrect that the ODG Guidelines constitute a blanket prohibition against judicial avenues of dispute resolution, Ms. Morgan errs by an assumption that UR is nothing but a means of employer obstructionism.

*Evaluation of Medical Necessity*

Having found it has authority to do so, the Court turns to an analysis of the evidence regarding medical necessity.

Under the ODG Guidelines, UR is defined as, "evaluation of the necessity, appropriateness, efficiency and quality of medical care services . . . provided to an injured

or disabled employee based on medically accepted standards and an objective evaluation of those services provided." Tenn. Comp. Rules & Regs. 0800-02-25-.03(11) (2016). Under this standard, Macy's argues Dr. Winans addresses the shortcomings of Dr. Schroerlucke's recommendation for surgery. Specifically, Macy's points to Dr. Winans' statements that there is 1) an absence of an EMG showing radiculopathy, 2) no evidence of spinal instability, and 3) no definite indication of a surgical lesion. When reviewing Dr. Winans' report, the Court notes he opines the "Guidelines state that there must be evidence of *radicular pain and sensory symptoms in a cervical distribution* that correlate with the involved cervical level *or presence of a positive Spurling's sign*." (Ex. 2 at 2.) (Emphasis added.)

Dr. Winans continues by stating, "Without a demonstration of spinal instability *or* objective neurological deficits including *reflex depression*, objective motor weakness or dermatomal sensory depression that correlate with imaging findings . . . of a surgical lesion . . . [the] guidelines would not support proceeding with cervical fusion surgery." (Ex. 2 at 2.) (Emphasis added.)

The Court finds Dr. Schroerlucke documented, on two occasions, that Ms. Morgan had a positive Spurling's sign; namely, October 27, 2015, and March 15, 2016. The first of those occasions was before Dr. Winans' UR review and the second after. A positive Spurling's sign is one prerequisite for the fusion procedure. Further, Dr. Schroerlucke found diminished biceps reflexes on the right on February 2, 2016, and March 15, 2016. "Reflex depression" is also a specific indicia of the need for surgery. Finally, Dr. Schroerlucke documented radicular complaints at every visit with Ms. Morgan. He also maintained a diagnosis of C4-C6 stenosis. Though a physician interpreted the EMG as normal, the Court cannot ignore the consistent history and documentation of radicular pain complaints.

Importantly, as of the first visit, Dr. Schroerlucke noted that medications and physical therapy had failed. Ms. Morgan cannot use most pain medications. That, coupled with the already failed physical therapy, and one year of pain, militate against the likelihood of a successful rehabilitation program suggested in Dr. Winans' review. Dr. Schroerlucke has followed Ms. Morgan from the outset, seen her on multiple occasions, and documented findings that UR cites as prerequisites to surgery. It stands to reason that the physician having the most contact with the patient might provide a more accurate opinion regarding necessary treatment. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 677 (Tenn. 1991).

Finally, the Court finds Ms. Morgan credible. Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). Ms. Morgan consistently reported, and Dr.

7

Schroerlucke recorded, the same complaints throughout his course of treatment. Her expressed desire to recover, even with endurance of surgery, is believable and sincere.

Exercising its obligation to "make decisions and determinations" as required by statute, this Court finds the surgery recommended by Dr. Schroerlucke is presumed medically necessary pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(I). Further, Macy's has not rebutted that presumption by clear and convincing evidence through the UR report. Rather, the Court finds Dr. Schroerlucke, supported by Ms. Morgan's credible history, adequately documented findings consistent with the ODG requirements for the recommended surgical procedure.

### Temporary Disability Benefits

Ms. Morgan requested temporary disability benefits for any period of disability due to surgery or other treatment. This issue is premature because Ms. Morgan has yet to be restricted from work due to medical treatment. If she is so restricted, then Macy's would be responsible for same if the inability to work is causally-related to any treatment for her injury of July 9, 2015.

### Motion To Expand Defenses

Finally, the Court must address Macy's "Motion to Expand The Scope Of The Dispute Certification Notice To Include Defense For Idiopathic Injury." It filed the motion on June 8, 2016, *after* the Expedited Hearing. The sole issue therein was Macy's desire to add a defense of idiopathic injury.

The motion is denied. An idiopathic injury defense is part of an argument against causation. Macy's stated in the motion that it "moves the Court to consider this defense when reviewing the Employee's testimony as to the cause of her fall." Macy's Motion at 2. Macy's stipulated to causation at the conclusion of the Expedited Hearing, and such stipulation renders any idiopathic defense moot. Further, the Court cannot consider any defense not raised in the Dispute Certification Notice unless the parties had no knowledge of the issue prior to issuance of the DCN, or could not have known of the issue despite reasonable investigation, or unless excluding presentation of the issue would result in substantial injustice to the party asking to add the issue. Tenn. Code Ann. § 50-6-239(b)(2) (2015). The Court finds neither exception applicable here.

The Court declines Ms. Morgan's request for sanctions against Macy's for filing the motion. This Court has no direct power to assess such sanctions under the facts presented and further finds no basis for referral to the Bureau's penalty program. *See* Tenn. Code Ann. § 50-6-118 and Tenn. Comp. Rules & Reg. 0800-02-24, *et. seq.* (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. Macy's shall pay for the surgery recommended by Dr. Schoerlucke, the authorized treating physician. Further, Macy's shall remain responsible for all other reasonable and necessary medical expenses related to the injury of July 9, 2015.

2. This matter is set for a Status Hearing on October 6, 2016, at 10:30 a.m. Central Time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 12th day of July, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Status Hearing:

An Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of

Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement

summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Medical Records of Tabor Orthopedics; and
2. Utilization Review Report of Genex Services (Dr. Winans).

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Correspondence from Macy's requesting in-person evidentiary hearing; and
5. Employer's Pre-Hearing Brief, Exhibit List, and Witness List.[5]

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of July, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Andrew L. Wener, Esq. Employee's Counsel | | | X | awener@wenerlawfirm.com |
| J. Allen Callison, Esq. Employer's Counsel | | | X | acallison@chartwelllaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

13