IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 12, 2004 Session

## DONNA KILGORE v. NHC HEALTHCARE

**Appeal from the Chancery Court for Sequatchie County**
**No. 1800     Jeffrey S. Stewart, Chancellor**

---

**No. M2002-02572-SC-R3-CV - Filed May 17, 2004**

---

We granted this appeal to determine whether the Chancellor had jurisdiction to hear the employee's appeal after diagnostic tests ordered by her physician were denied by the employer's utilization review program. The Chancellor found that the diagnostic tests were reasonable and necessary and ordered that they be provided by the employer. The employer appealed, arguing that the Chancellor did not have jurisdiction to hear the appeal because the employee's recourse was limited to review by the Commissioner of Labor and Workforce Development's utilization review program. The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated section 50-6-225(e)(3), but the appeal was transferred to the full Supreme Court prior to the Panel issuing its decision. After reviewing the record and applicable authority, we conclude that the Chancellor had jurisdiction to consider the employee's appeal of the decision to deny diagnostic tests made by the employer's utilization review program. We therefore affirm the judgment.

**Tenn. Code Ann. § 50-6-225(e)(3); Judgment of the Trial Court Affirmed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Paul Campbell, III, Chattanooga, Tennessee, for the Appellant, NHC Healthcare.

Alexander W. Gothard, Chattanooga, Tennessee, for the Appellee, Donna Kilgore.

**OPINION**

**BACKGROUND**

The employee, Donna Kilgore ("Kilgore"), injured her lower back while in the course and scope of her employment and filed a workers' compensation claim against her employer, NHC Healthcare ("NHC"). The facts are summarized below.

On January 18, 1999, Kilgore was working as a certified nursing assistant for NHC when she injured her lower back while moving a patient into the shower. She was referred by her employer to Dr. Steven Craig Humphreys, an orthopaedic surgeon, who conducted an examination on February 9, 1999. According to Dr. Humphreys,[1] Kilgore had "quite a bit of pain" in her back and right leg, and numbness and tingling in her right foot. He ordered a Magnetic Resonance Imaging ("MRI") diagnostic procedure which demonstrated that Kilgore had a "small disc bulge" in the lumbar spine at L4-5, as well as some degenerative damage at S-1. Dr. Humphreys testified that Kilgore's treatment consisted of physical therapy and medication for pain and inflammation. She returned to work on February 25, 1999, with work restrictions prohibiting lifting over ten pounds, bending, and twisting. The work restrictions were lifted in April of 1999.

In May of 1999, Kilgore re-injured her lower back while moving a patient. She returned to Dr. Humphreys and was treated with physical therapy, anti-inflammatory medication, and epidural steroid injections. Dr. Humphreys testified that Kilgore continued to have pain, particularly while sitting, and that a discogram at the L4-5 level showed that Kilgore had radiating pain in her left leg and hip. When Kilgore reported that she continued to have low back pain in September of 1999, Dr. Humphreys ordered a second MRI because "it had been over eight months" since she had the initial MRI. The MRI was denied by NHC's utilization review program. Shortly thereafter, in November of 1999, Kilgore filed a workers' compensation claim.

When Dr. Humphreys was deposed before trial, he testified that Kilgore had reached maximum medical improvement in December of 1999, and that she had a five percent permanent impairment to the body as a whole. He also testified that in April of 2000, Kilgore complained that her back pain had worsened and that the pain interfered with her sleep and caused her to be mildly depressed. Dr. Humphreys acknowledged that Kilgore was overweight, but he testified that her lower back pain was suggestive of a disc problem because it worsened when Kilgore was in a seated position.

Kilgore and NHC settled the workers' compensation claim before trial, and on January 4, 2001, the trial court approved the settlement. The judgment awarded Kilgore a lump sum of $10,000 and ordered two years of future medical treatment from December 4, 2000, to December 4, 2002.

---

[1] Dr. Humphreys was deposed before the settlement in July of 2000 and afterwards in July of 2001.

After the settlement was approved and the judgment was entered, Kilgore reported that she "still had pain in her back." Dr. Humphreys testified in a later deposition that he ordered an additional MRI and discogram to obtain information about Kilgore's condition and to determine the appropriate treatment options. He explained that the procedures were reasonable and necessary:

> [T]hese things aren't something visual. It's not like a tumor or an infection where you can visually see it or they have a fever. When the outer part of the disc ruptures, most of it's painful to motion or sitting and it's . . . a subjective conversation you have between yourself and the patient. Typically there aren't reflex changes, there aren't sensory changes.
>
> . . . .
>
> [S]he [was] reporting things that [were] discogenic in nature, which with an MRI showing degenerative disc changes make that the most likely diagnosis. Again, the discogram helps to confirm the diagnosis and that's another reason we'd like to get it.

Dr. Humphreys' requests for an MRI and a discogram were again denied by NHC's utilization review program.

In March of 2001 – two months after the settlement was approved by the trial court – Kilgore filed in the trial court a "petition for contempt" alleging that NHC "failed and refused to approve . . . medical treatment" as required by the trial court's judgment. In response, NHC asserted that the trial court had no jurisdiction and that Kilgore's right to seek review of the decision made by NHC's utilization review program was limited to an appeal to the Commissioner of Labor and Workforce Development's ("Commissioner") utilization review program. NHC's response included the affidavit of Dr. Robert Clendenin, who stated that an additional MRI and a discogram were not reasonably necessary in Kilgore's case.

The trial court treated Kilgore's petition for contempt as a motion to enforce the judgment and ordered NHC to provide the requested MRI and discogram. The trial court rejected NHC's argument that it lacked jurisdiction and reasoned that the "statutory requirements regarding utilization review are more appropriate for cases of lifetime benefits . . . ." NHC appealed the judgment to the Special Workers' Compensation Appeals Panel, which heard oral argument. The appeal was then transferred to the full Supreme Court prior to the Panel issuing its decision

## STANDARD OF REVIEW

Our standard of review of questions of fact in a workers' compensation appeal is de novo upon the record, with a presumption that the trial court's findings are correct unless the preponderance of evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 2003); see also

Richards v. Liberty Mut. Ins. Co., 70 S.W.3d 729, 732 (Tenn. 2002). Our standard of review of questions of law, however, such as that presented in this case, is de novo without a presumption of correctness. See Richards, 70 S.W.3d at 732.

## ANALYSIS

On appeal, NHC argues that the Chancellor lacked the authority to consider Kilgore's petition for contempt as a motion to enforce the judgment because review of the decision made by NHC's utilization review program was limited to the Commissioner's utilization review program under Tennessee Code Annotated section 50-6-124(d) (1999). The employee, Kilgore, argues that the Chancellor had jurisdiction to consider the petition and properly ordered NHC to provide an additional MRI and discogram.[2]

### Utilization Review

To place this case into an understandable context, we will first summarize the statutory provisions governing utilization review programs in workers' compensation cases.

In 1992, the legislature enacted a number of statutes authorizing and creating programs for the management and the "utilization and quality of medical care services" in workers' compensation cases. See Tenn. Code Ann. § 50-6-122(a)(1) (1999). The legislature defined "utilization review" in workers' compensation cases as the "evaluation of the necessity, appropriateness, efficiency and quality of medical care services provided to an injured or disabled employee based on medically accepted standards and an objective evaluation of the medical care services provided . . . ." Tenn. Code Ann. § 50-6-102(17) (Supp. 2003). The legislative intent in adopting utilization review is to make "quality medical care services . . . available to injured and disabled employees[,]" while "establishing cost control mechanisms to ensure cost-effective delivery of medical care services . . . ." Tenn. Code Ann. § 50-6-122(a)(1) (1999).

To implement utilization review programs, the Commissioner is required by statute to establish "a system of utilization review of selected outpatient and inpatient health care providers to employees claiming benefits under the Workers' Compensation Law . . . ." Tenn. Code Ann. § 50-6-124(a) (1999); see also Tenn. Comp. R. & Regs. 0800-2-6-.02(2) (2003) ("The Commissioner of Labor shall provide or contract for certain utilization review services."). In addition, employers are then permitted to implement their own utilization review programs by contracting with a utilization review provider. See Tenn. Code Ann. § 50-6-124(d) (1999). In short, utilization review provides a mechanism for employers to review and evaluate the cost, reasonableness, and necessity of medical services provided to employees in workers' compensation cases. See Tenn. Code Ann. § 50-6-122(a)(1), (2) (1999).

---

[2] Although Kilgore has also asserted that the issues are moot, NHC correctly argues that there is no factual basis in the record upon which to support the contention. Accordingly, we will address the merits of the appeal.

-4-

**Jurisdiction**

We now turn to the pivotal issue in this case. As noted above, NHC argues that an appeal of the decision made by its own utilization review program regarding Kilgore was limited to the Commissioner's utilization review pursuant to Tennessee Code Annotated section 50-6-124(d) (1999). Kilgore, on the other hand, asserts that the Chancery Court had jurisdiction to hear this matter.

Because these arguments involve interpretation of numerous statutory provisions, we will first summarize familiar principles of statutory interpretation. When examining statutes, courts must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning or application. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). If the language of the statute is unambiguous, courts must apply its ordinary and plain meaning. Id.; see also Niziol v. Lockheed Martin Energy Sys., Inc., 8 S.W.3d 622, 624 (Tenn. 1999). If the language is ambiguous, however, the court must examine the entire statutory scheme and the legislative history to ascertain and give effect to the legislative intent. Parks, 974 S.W.2d at 679.

We begin our statutory analysis in this case with Tennessee Code Annotated section 50-6-124(d), which provides as follows:

> Nothing in this section shall prevent an employer from electing to provide utilization review; however, if the employee, provider or any other party not contractually bound to the employer's utilization review program disagrees with that employer's utilization review, then that employee, provider or other party <u>shall have recourse to the commissioner's utilization review program</u>, as provided for in this section.

(emphasis added).

After examining the statute, we conclude that NHC's argument that appeal of a medical services decision made by its utilization review program lies solely with the Commissioner's utilization review program is not supported by the plain and ordinary meaning of section 50-6-124(d). The statute provides that an employee (or a medical provider or other party) who disagrees with a determination made by an employer's utilization review "shall have recourse" to the Commissioner's utilization review program. Although the phrase "shall have recourse" is not defined in this statutory section or elsewhere, the plain and ordinary meaning of the section does not replace or limit judicial review. For instance, section 50-6-124(d) could have but does not state that review by the Commissioner is the *sole* or *exclusive* means of appealing an employer's utilization review decision, nor does the statute state that seeking recourse to the Commissioner is a *condition* to appealing to the court that had jurisdiction of the workers' compensation claim. Indeed, had the legislature intended for recourse to the Commissioner's utilization review program to be the

*only* means of appeal, thereby divesting the trial court of jurisdiction to enforce its own judgment, it would have stated so in plain and ordinary language.

We also conclude that NHC's argument for limiting an appeal of its utilization decision to the Commissioner's utilization program is inconsistent with the statutory scheme of the Workers' Compensation Act. For example, one section of the Act, Tennessee Code Annotated section 50-6-204(a)(1) (Supp. 2003), states that an employer "shall furnish free of charge . . . such medical and surgical treatment . . . ordered by the attending physician . . . as may be reasonably required" for an employee's work-related injury. Part of the same statute, Tennessee Code Annotated section 50-6-204(a)(5) (Supp. 2003), provides that "[a]ll cases of dispute as to the value of such services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation." Similarly, in cases where there is "a dispute over or failure to agree upon compensation . . ., either party may file a civil action in the circuit, criminal, or chancery court in the county in which the employee resides or in which the alleged injury occurred." Tenn. Code Ann. § 50-6-225(a)(1) (Supp. 2003).

The foregoing statutes provide for extensive review of claims and disputes in workers' compensation cases by the court that has jurisdiction over the claim. See Tenn. Code Ann. §§ 50-6-204(a)(5), 50-6-225(a)(a). Because the statute relied upon by NHC, Tennessee Code Annotated section 50-6-124(d), does not expressly state that appeals of decisions made by an employer's utilization review program are solely or exclusively through the Commissioner's utilization review program, it must be construed harmoniously with the provisions that allow appeals in workers' compensation matters.[3] Moreover, we believe that granting employees recourse through the Commissioner in addition to judicial review is consistent with the remedial purpose of the Workers' Compensation Act. Tenn. Code Ann. § 50-6-116 (1999); see also McCall v. Nat'l Health Corp., 100 S.W.3d 209, 213 (Tenn. 2003) (holding that the trial court's authority to initiate workers' compensation benefits before the final adjudication was not divested by the legislature and was consistent with the stated purpose of the Worker's Compensation Act).

Accordingly, we conclude that the Chancellor's ruling that he had jurisdiction to decide this case was consistent with the language of Tennessee Code Annotated section 50-6-124(d) (1999) and the provisions and purpose of the Workers' Compensation Act.

## CONCLUSION

After reviewing the record and applicable authority, we hold that the Chancery Court had jurisdiction to consider the employee's appeal from the decision of the employer's utilization review

---

[3] Although NHC correctly asserts that a specific statutory provision will often prevail over the terms of a more general statute, this statutory interpretation principle is inapplicable given our conclusion that the plain and ordinary language of Tennessee Code Annotated section 50-6-124(d) does not provide a specific and exclusive mechanism for seeking recourse in utilization review cases.

program.  We therefore affirm the judgment.  Costs of this appeal are taxed to the appellant, NHC Healthcare, and its surety, for which execution shall issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE