FILED

September 15, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 7:47 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| TIM VENABLE | ) | Docket No.: 2015-05-00582 |
|     Employee, | ) | |
| v. | ) | State File No.: 78398-2014 |
| | ) | |
| SUPERIOR ESSEX, INC. | ) | |
|     Employer, | ) | |
| And | ) | Judge Dale Tipps |
| | ) | |
| SENTRY CASUALTY CO. | ) | |
|     Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL BENEFITS
### *(REVIEW OF THE FILE)*

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Tim Venable, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Venable is entitled to the knee replacement surgery recommended by Dr. Scott McCall. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Venable is likely to establish at a hearing on the merits that the recommended surgery is medically reasonable and necessary. For the reasons set forth below, the Court holds Mr. Venable is entitled to the requested medical benefits at this time.[1]

This Court finds it needs no additional information to determine whether Mr. Venable is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2015), Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2015), and Rule 7.02 of the Practices and Procedures of the Court of Workers' Compensation Claims (2015), the Court decides this

---

[1] A complete listing of the technical record and exhibits considered by the Court is attached to this Order as an appendix.

matter upon a review of the written materials.

## History of Claim

A review of the file established the following facts.[2]  Mr. Venable suffered a previous injury to his left knee in 2005, which Dr. Randall Davidson diagnosed as "chondromalacia patella and medial femoral condyle."  Dr. Davidson performed a surgical debridement of the knee on October 17, 2005.  (Ex. 7.)

Mr. Venable sustained a compensable injury to the same knee on September 18, 2014, while in the course and scope of his work with the employer, Superior Essex, Inc.  Beginning on October 29, 2014, Superior provided treatment with Dr. Davidson, who assessed a medial meniscus tear and patellofemoral arthritis of the left knee. (Ex. 4.)  Dr. Davidson performed an arthroscopic meniscal repair and debridement of chondromalacia of the patella and medial femoral condyle on December 4, 2014.  (Ex. 5.)

Mr. Venable continued to see Dr. Davidson with complaints of pain in his knee.  After several months, Dr. Davidson suspected Mr. Venable's pain was "related to the arthritic changes noted at the time of his surgery."  He ordered an MRI and referred Mr. Venable to another physician in his practice, Dr. Scott McCall, for evaluation of a knee replacement.  (Ex. 13.)

Dr. McCall saw Mr. Venable on May 14, 2015.  After examining Mr. Venable and reviewing his medical records and imaging reports, Dr. McCall diagnosed osteoarthritis of the left knee.  He also stated:

> I think the current issue and need for partial knee replacement versus total knee are related to his original work comp injury.  He has had significant progression of arthritic change in his medial compartment since the injury and menisectomy.  We will only do a total knee if a uni is not the best option for him once we actually open the knee up during surgery.

(Ex. 15.)

Superior sent Dr. McCall's surgical recommendation for Utilization Review (UR) by Dr. Glenn Smith.  He reviewed Mr. Venable's medical file and recommended non-certification on June 24, 2015.  Referring to the Eleventh Edition of the Official Disability Guidelines (ODG), Dr. Smith noted that a unicompartmental or partial replacement was not supported because Mr. Venable had mild cartilage changes in two compartments.  He also recited the ODG requirement for total knee replacement as

---

[2] With the exception of Dr. McCall's deposition transcript, all the documents submitted for consideration by the Court were included as exhibits attachments to Superior's Brief in Opposition to Employee's Request for Medical Treatment.  For ease of reference, the Court will utilize the same exhibit numbers as those used in the Brief.

2

"significant loss of chondral clear space in at least one of three compartments with varus or valgus deformity and indication with additional strength." Because Mr. Venable only had grade 1 cartilage thinning, Dr. Smith felt he did not meet this requirement of "significant osteoarthritis" and was not a proper candidate for total knee replacement. Restating the ODG indications for surgery included objective findings of over fifty years of age and a Body Mass Index (BMI) of less than forty, Dr. Smith also noted Mr. Venable was forty-six years of age with a BMI of 42.72. (Ex. 16.)

Mr. Venable returned to Dr. McCall following the UR denial. Dr. McCall's note of June 29, 2015, states:

> The information in the denial letter is incorrect. Mr. Venable had an acute injury resulting in complete meniscectomy on 9/18/2014. He is now 9 months out from that injury and has progressed to bone on bone deformity in the knee. There is clear progression in his radiographic findings comparing today's x-ray with the original x-rays from 9/18/2014. The 9/28/2014 [sic] x-ray showed very minimal degenerative change. 6/29/2015 x-ray shows bone on bone deformity in his medial compartment with joint subluxation. His hip to ankle alignment shows a 8-10 deg varus deformity. . . . There is no intervention short of a knee replacement based on his clinical condition and radiographic findings that will allow him to return to regular duty. Due to his radiographic findings I recommend total knee arthroplasty.

(Ex. 17.)

After Superior received Dr. McCall's explanation and his renewed surgical recommendation, it submitted it to UR a second time. Dr. Bart Goldman reviewed the file and issued a report on July 16, 2015. Dr. Goldman stated:

> Assuming that the most recent x-rays have been appropriately interpreted then total knee replacement is indeed reasonable. However I disagree with the treating orthopedist's opinion that the progression of this gentleman's disease is from his partial medial meniscectomy. It is much more within a reasonable degree of medical probability that the rapid increase in this gentleman's degenerative change in the medial compartment of his knee is related to the chondroplasty or actual removal of cartilage performed for his pre-existing chondromalacia than as a result of his partial medial meniscectomy. Therefore, this gentleman's need for his total knee replacement is related to his obesity, his pre-existing degenerative joint disease and the surgery performed for the pre-existing degenerative joint disease i.e. the chondroplasty. It is, therefore, recommended that a total knee replacement, while likely reasonable, be considered unrelated to the

3

injury in question.

(Ex. 18.)

Dr. McCall testified in his deposition that Dr. Goldman's denial was appealed to the Bureau's Medical Director, Dr. Robert Snyder, although the record does not specify whether Dr. McCall or Mr. Venable filed the appeal. The Medical Director issued a letter dated September 1, 2015, stating, "The physician is in agreement with the **denial** by utilization review completed by Eckman/Freeman on 7/26/2015 regarding the unicompartmental left knee replacement." The letter continued, "This determination relates only to medical necessity. Please note that this decision shall not be used to determine causation and/or compensability per the provisions of T.C.A. § 50-6-102(19)." (Ex. 19.)

Following the UR denial, Dr. McCall continued to treat Mr. Venable with cortisone injections. He reiterated his opinion that Mr. Venable needs a total knee replacement to correct his post-traumatic osteoarthritis. (Ex. 20.)

The parties deposed Dr. McCall on March 16, 2016. He testified that Mr. Venable's work injury resulted in a 100-percent tear of his meniscus. While the December 4, 2014 arthroscopic surgery "cleaned up" the torn edges, it did not make the meniscus functional. This loss of joint space and the resulting bone-on-bone condition caused a progression of his arthritis. Dr. McCall felt the only realistic option was knee replacement. (McCall Dep. at 8, 10, 14.)

Following Superior's denial of the recommended medical treatment, Mr. Venable filed a Petition for Benefit Determination seeking an order requiring Superior to authorize the knee replacement surgery. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Venable filed a Request for Expedited Hearing and asked the Court to issue a ruling based on a review of the file without an evidentiary hearing. Upon determining no additional information was needed to determine whether Mr. Venable was likely to prevail at a hearing on the merits of the claim, the Court issued a Docketing Notice on July 26, 2016, identifying the documents it received for review and advising the parties that they had until August 4, 2016, to file any objections to the admissibility of any of those documents. The parties filed no objections, but because the Workers' Compensation Appeals Board was considering a case potentially involving similar UR issues, agreed that the Court should delay its order in this matter until the Board issued its opinion.

Following the Board's opinion in the case of *Morgan v. Macy's*, No. 2016-08-0270, 2015 TN Wrk. Comp. App. Bd. LEXIS 39 (Tenn. Workers' Comp. App. Bd. Aug. 31, 2016), the Court advised the parties they had until September 8, 2016, to file any

4

additional arguments. The parties filed nothing further.

In his Brief, Mr. Venable argued that the Workers' Compensation Statute grants the Court of Workers' Compensation Claims jurisdiction over the issue of reasonableness and necessity of medical treatment, including cases in which the Medical Director has issued an opinion. He did not make any arguments addressing the medical proof in this case.

Superior argued in its Response that the Medical Director's decision should be deemed final and should not be subject to review by the Court. Alternatively, it notes two independent UR doctors and the Medical Director denied the knee replacement surgery. Superior argues these objective evaluations of Dr. McCall's recommendation constitute a preponderance of the evidence proving the knee replacement is not medically necessary.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Venable need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id*.; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether he has met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Venable nor Superior. *See* Tenn. Code Ann. § 50-6-116 (2015).

*Utilization Review*

The Court must first address Superior's argument that it lacks authority to consider issues of medical necessity after a UR denial. The Court notes it has "original and exclusive jurisdiction over all contested claims for workers' compensation benefits when the date of the alleged injury is on or after July 1, 2014." Tenn. Code Ann. § 50-6-237(2015). Further, the Court recognizes its statutory authority under Tennessee Code Annotated section 50-6-238(a)(3) (2015), "to hear and determine claims for compensation, to approve settlements of claims for compensation, to conduct hearings, and to *make orders, decisions, and determinations*." (Emphasis added.) Accordingly, the Court finds it has statutory authority to review the medical evidence in this case. To hold otherwise would deprive Mr. Venable, or any party, of a hearing to determine issues regarding medical necessity.

Tennessee Code Annotated section 50-6-204(A)(3)(H) (2015) provides a treating physician's opinion regarding medical necessity shall be presumed to be medically necessary. If this Court had no authority to hear issues of medical necessity, then a party would have no venue to argue whether that presumption had been rebutted. This would render section 50-6-204(A)(3)(I) meaningless. The Court has a duty to construe a statute so that no part will be rendered inoperative, superfluous, void, or insignificant. *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002).

Further, the Court finds the common law to be instructive. In *Kilgore v. NHC Healthcare*, 134 S.W.3d 153 (Tenn. 2004), our Supreme Court addressed an employer's argument that an appeal to the Medical Director was the exclusive remedy to overturn a UR denial. The Court noted such argument was "not supported by the plain and ordinary meaning of section 50-6-124(d)," which reads, then and now, as follows:

> Nothing in this section shall prevent an employer from electing to provide utilization review; however, if the employee, provider or any other party not contractually bound to the employer's utilization review program disagrees with that employer's utilization review, then that employee, provider or other party *shall have recourse* to the commissioner's utilization review program, as provided for in this section.

*Id.* at 158. (Emphasis added.)

The Court found the term "shall have recourse" means a party *can* seek administrative review but, seeking administrative review "does not replace or limit judicial review." *Id.* The statute, by its plain meaning, did not provide that administrative appeal was the "sole or exclusive means of appealing an employer's [UR] decision, nor [did] the statute state that seeking recourse [within the UR system] is a condition to appealing to the court that had jurisdiction" of the case. *Id.*

Nothing in the current statute limits *Kilgore's* applicability. To the contrary, the Court notes the current version of Tennessee Code Annotated section 50-6-124(d) (2015) is identical to the version in effect when the Supreme Court decided that case.

Finally, as noted above, the Workers' Compensation Appeals Board recently addressed UR issues in *Morgan v. Macy's*. The employee in *Morgan* filed a PBD challenging a UR denial of a surgical recommendation made by her authorized treating physician (ATP). The Board addressed the application of the "clear and convincing" standard in overcoming the presumption of medical necessity.[3] Although it did not directly consider the issue, the Board's analysis suggests an implicit recognition of the

---

[3] This heightened evidentiary standard, created by Tennessee Code Annotated section 50-6-124(h) (2015), only applies to treatment recommendations made subsequent to the Bureau's adoption of treatment guidelines.

trial court's authority to consider issues of medical necessity in cases of UR denial.

Based on the foregoing, the Court concludes that the Medical Director's upholding of Superior's UR denial does not preclude Mr. Venable's seeking judicial review in this Court. The Court holds it has authority to review the medical evidence in this case and determine whether it supports a finding that Mr. Venable is entitled to the recommended surgery.

*Medical Necessity*

As noted above, Tennessee Code Annotated section 50-6-204(a)(3)(H) (2015) provides: "Any treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Because Dr. Davidson specifically referred Mr. Venable to Dr. McCall, the knee replacement surgery recommended by Dr. McCall is presumed to be medically necessary.[4] Superior contends it has overcome this presumption with the opinions of Dr. Smith, Dr. Goldman, and Dr. Snyder. The Court disagrees.

Dr. Smith opined in his UR report that a unicompartmental or partial replacement was not supported because Mr. Venable had mild cartilage changes in two compartments. He also felt Mr. Venable did not meet the requirement of "significant osteoarthritis" necessary for total knee replacement because he only had grade 1 cartilage thinning.

Dr. McCall responded by saying the information in Dr. Smith's letter was incorrect. He pointed out that Mr. Venable had more than just cartilage thinning, but had a complete menisectomy in September 2014. Dr. McCall felt that the x-rays demonstrated a nine-month progression from minimal degenerative change to bone-on-bone deformity in the knee, as reflected in the June 29, 2015 x-ray, which was performed after Dr. Smith issued his denial.

Superior argued that Dr. McCall's interpretation of the x-rays is flawed because imaging studies showed "very mild and minimal changes in the arthritic condition" between October 29, 2014, and May 5, 2015. It contended Dr. McCall's reading of these imaging studies directly conflicts with Dr. Davidson's previous findings. This argument overlooks the fact that Dr. Davidson noted that the June 29, 2015 x-ray showed "bone on bone deformity in his medial compartment with joint subluxation." It further ignores the

---

[4] The Court notes subsection (I) provides the presumption may only be rebutted by clear and convincing evidence following the adoption of treatment guidelines. As the treatment recommendation submitted to UR was made in 2015, prior to the Bureau's adoption of treatment guidelines on March 1, 2016, the Court is applying a preponderance of the evidence standard in this case. However, the Court also notes Dr. McCoy reiterated his recommendations in his March 16, 2016 deposition. It is unclear whether this would bring his recommendation under the purview of subsection (I). The Court finds it unnecessary to make this determination, as a simple preponderance of the evidence failed to overcome the presumption.

fact that Dr. Davidson specifically referred Mr. Venable to Dr. McCall for an evaluation of the need for knee replacement. As no medical evidence was submitted suggesting the x-rays were improperly interpreted, the Court finds Dr. McCall's explanation to be persuasive.

The June 29, 2015 x-rays and Dr. McCall's recommendation for total knee replacement triggered the second UR evaluation. Dr. Goldman conducted this evaluation, and his UR report is somewhat peculiar. Insofar as he actually addressed medical necessity, Dr. Goldman supported Dr. McCall's treatment recommendations by stating, "Assuming that the most recent x-rays have been appropriately interpreted then total knee replacement is indeed reasonable." However, he then opined that the surgery should be considered unrelated to Mr. Venable's workplace injury.

Tennessee Code Annotated section 50-6-102(20) (2015) defines "Utilization review" as "evaluation of the necessity, appropriateness, efficiency and quality of medical care services." Rule 0800-02-06-.04(2)(a) (2015) of the Tennessee Compilation Rules and Regulations further states: "The utilization review agent shall only consider the medical necessity, appropriateness, efficiency, and quality of the recommended treatment for the employee's condition." Dr. Goldman's causation opinion was therefore improper, as it exceeded the statutory scope of Utilization Review.[5]

The only document submitted regarding any appeal to the Medical Director is Dr. Snyder's September 1, 2015 letter stating he was "in agreement with the denial by utilization review completed by Eckman/Freeman on 7/26/2015 regarding the unicompartmental left knee replacement." This letter is problematic for a number of reasons. First, neither of the UR denials (which were both completed by Eckman/Freeman) was dated July 26, 2015. The letter may refer to Dr. Goldman's July 16, 2015 report. If so, Dr. Snyder's conclusion is unclear, as Dr. Goldman actually agreed with the medical necessity of knee replacement surgery. If Dr. Snyder intended to agree with Dr. Goldman, he was effectively agreeing with the determination that the recommended surgery is necessary.[6]

Because his letter refers to "unicompartmental" knee replacement, Dr. Snyder may have intended to agree with Dr. Smith's June 24, 2015 report, as unicompartmental knee replacement was the recommendation addressed by Dr. Smith. Based on the evidence submitted, the Court has insufficient information to conclude that Dr. Smith's UR

---

[5] Even if the Court were to consider Dr. Goldman's causation opinion, Superior submitted no evidence suggesting Dr. McCall's methodology or analysis was fundamentally unsound, or that Dr. Goldman's was superior. Thus, Dr. Goldman's opinion would be insufficient to overcome the presumption of correctness afforded Dr. McCall's opinion by Tennessee Code Annotated section 50-6-102(14)(E) (2015).

[6] Dr. Snyder obviously did not address Dr. Goldman's improper causation opinion, as his letter clearly states, "This determination relates only to medical necessity. Please note that this decision shall not be used to determine causation and/or compensability per the provisions of T.C.A. § 50-6-102(19)."

8

decision was ever appealed.[7] Thus, if Dr. Snyder intended to uphold that denial, it is not clear he had any authority to do so.

In any event, the most recent surgical recommendation made by the authorized treating physician occurred after the UR denial of unicompartmental knee replacement. This was Dr. McCall's June 29, 2015 recommendation for total knee replacement. Dr. Goldman did not deny this procedure as medically unnecessary and the Medical Director did not address it. Therefore, the Court holds that Superior has failed to overcome the statutory presumption of medical necessity by a preponderance of the evidence. Mr. Venable thus appears likely to prove at a hearing on the merits that the recommended total knee replacement is medically reasonable and necessary.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Venable's injuries shall be paid and Superior or its workers' compensation carrier shall provide Mr. Venable with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2015), to include the total knee replacement operation recommended by Dr. McCall. Medical bills shall be furnished to Superior or its workers' compensation carrier by Mr. Venable or the medical providers.

2. This matter is set for an Initial (Scheduling) Hearing on November 15, 2016, at 9:00 a.m..

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 15th day of September, 2016.**

---

[7] Dr. McCall testified it was Dr. Goldman's UR denial that was appealed.

9

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

<u>Initial (Scheduling) Hearing</u>:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Index and exhibits attached to Superior's Brief in Opposition to Employee's Request for Medical Treatment
2. Deposition of Dr. Scott McCall

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Stipulations filed April 21, 2016
5. Notice of Factual Correction on DCN filed February 19, 2016
6. Parties' Briefs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 15th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Mark Lambert | | | X | mlambert@forthepeople.com |
| Lee Anne Murray | | | X | leeamurrary@feeneymurray.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**