FILED

July 7, 2017

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:00 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Michael Wilson, | ) | Docket No.: 2017-01-0079 |
| Employee, | ) | |
| v. | ) | |
| Dixie Produce, Inc., | ) | State File No.: 16470-2015 |
| Employer, | ) | |
| And | ) | |
| Key Risk, | ) | Judge Audrey A. Headrick |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER
## (DECISION ON THE RECORD)

This claim came before the Court upon a Request for Expedited Hearing (REH) filed by Michael Wilson. The Court issued a Docketing Notice on June 16, 2017, allowing seven business days for the parties to file objections. Neither side filed objections, and Dixie Produce, Inc. (Dixie Produce) did not object to a decision on the record. Mr. Wilson requests that the Court order Dixie Produce to authorize a surgical procedure recommended by the authorized physician. Dixie Produce contends the utilization review (UR) determined, more than once, that the requested surgery is not medically necessary. The central legal issue is whether Mr. Wilson is likely to establish at a hearing on the merits that he is entitled to the requested surgery despite the UR denials. This Court holds it needs no additional information to determine this issue. For the reasons set forth below, the Court holds Mr. Wilson is entitled to the requested benefit.

### History of the Claim

Mr. Wilson fell from a loading dock on February 21, 2015, and landed on his back. After his injury, Mr. Wilson received authorized medical treatment from Dr. Alexander Roberts at Parkridge Medical Group Spine Surgery Associates for low-back pain that radiated down his left leg. Dr. Roberts treated Mr. Wilson with conservative treatment such as prescription medication, physical therapy, and an injection. He also

1

ordered two lumbar spine MRIs and a nerve conduction study (NCS) of the left lower extremity, and he referred Mr. Wilson to pain management. Due to Mr. Wilson's ongoing complaints of pain, Dr. Roberts ultimately referred him for a surgical evaluation.

On August 23, 2016, Mr. Wilson saw Dr. Richard Pearce, who is in the same practice as Dr. Roberts, for a surgical evaluation. Dr. Pearce agreed with the electromyographer, who stated the EMG was "consistent with, but not diagnostic for, an L4 and L5 nerve root injury." (Ex. 8.) He also reviewed the lumbar MRI, which indicated "a severe foraminal stenosis with L5 nerve root compression." *Id.* At that visit, Dr. Pearce recommended a fusion at L5-S1.

Dixie Produce requested UR of the recommended surgery and, on September 21, Coventry, a UR organization, issued a report from Dr. Gregory Goldsmith, an orthopedic surgeon. After reviewing 268 pages of Mr. Wilson's records, diagnostic reports, and physical therapy records, Dr. Goldsmith determined that the recommended surgery was non-certified. Dr. Goldsmith stated he based the non-certification on the criteria of the *Official Disability Guidelines* (ODG), Online Edition 2016, for the following reasons: "Medical records submitted for review had no documentation of significant objective findings to warrant the requested procedure. In addition, a psychological evaluation should be done first before referral to surgery to improve surgical outcomes." (Ex. 9.) Following an appeal of the UR denial, Dr. Robert Snyder, Medical Director of the Bureau of Workers' Compensation, upheld the denial based on his determination that the recommended surgery was not medically necessary.

After receipt of Dr. Snyder's determination, Mr. Wilson deposed Dr. Pearce to address the issues raised by Dr. Goldsmith. First, Dr. Pearce discussed Dr. Goldsmith's determination that no significant objective findings exist to support the recommended surgery. Dr. Pearce stated that he reviewed both of Mr. Wilson's MRIs, which showed objective evidence of "anatomic changes that could be producing his symptoms." (Ex. 4 at 8.) He also stated the NCS showed objective evidence of L5 nerve root irritation. *Id.* at 8; 13. Likewise, Dr. Pearce agreed that Mr. Wilson's subjective complaints were "consistent with the dermatome of nerve compression in his lower back." *Id.* at 10. He explained that the surgery is to help relieve Mr. Wilson's L5 radiculopathy. *Id.* at 25.

Next, Dr. Pearce addressed Dr. Goldsmith's recommendation for a psychiatric evaluation to improve Mr. Wilson's surgical outcome. Dr. Pearce noted that Veta Daffron, the surgery scheduler in his office, communicated with Josh Evans, the adjuster, who told her that, "the psych eval will not change the decision for the surgery." *Id.* at 14-15. Based on that communication, Dr. Pearce did not think ordering a psychiatric evaluation was necessary. *Id.* at 13-15. However, Dr. Pearce stated he was happy to write an order for the evaluation after his deposition. *Id.* at 15.

During his deposition, Dr. Pearce acknowledged he did not perform a physical examination of Mr. Wilson. Instead, Dr. Pearce stated he relied on the medical records and diagnostic reports provided to him by Dr. Roberts. Dr. Pearce explained that he does

2

perform a physical examination if he feels it is necessary to do so after reviewing the prior treatment records. He also testified that he discussed treatment options with Mr. Wilson "since he had failed conservative management." *Id.* at 29.

Following Dr. Pearce's deposition, Mr. Wilson filed a Petition for Benefit Determination (PBD) on February 6, 2017. In the PBD, Mr. Wilson identified the UR denial as the disputed issue. Dixie Produce filed a motion to dismiss the PBD for failure to timely file same. Rule 0800-02-06-.07(6) (2016) of the Tennessee Compilation Rules and Regulations states that a party who wishes to appeal the Medical Director's determination on a UR denial "may file a Petition for Benefit Determination (PBD) with the Court of Workers' Compensation Claims within seven (7) business days of the receipt of the determination to request a hearing of the dispute in accordance with the applicable statutory provisions." Upon review, the Court found that Mr. Wilson did not timely file a PBD seeking relief from the Medical Director's determination, granted Dixie Produce's motion and dismissed Mr. Wilson's PBD without prejudice to its refiling.

Three days after the Court dismissed Mr. Wilson's PBD, Dr. Pearce again recommended the same surgical procedure in a "Spine Surgery Associates Surgery Scheduling" form. (Ex. 2.) Mr. Wilson filed a new PBD the following day. Dixie Produce again requested UR of the recommended surgery and, on May 5, Coventry issued another report from Dr. Goldsmith. For this UR, Dr. Goldsmith only reviewed thirty-seven pages of records, which did not include Mr. Wilson's diagnostic reports or physical therapy records. Based on the ODG criteria, Dr. Goldsmith determined the surgery was non-certified. He stated the following reasoning:

> There were limited significant objective findings in the most recent medical report. Also, there was no actual report of the MRI to evaluate and validate the findings. Moreover, there was no evidence of exhaustion of all conservative care such as physical therapy in the records submitted. Furthermore, there was no psychosocial screen with confounding issues that would address the presence and/or absence of identified psychological barriers that are known to preclude post-operative recovery. There were no exceptional factors noted. Thus, the request is not supported.

(Ex. 9.) The record does not reflect that either Mr. Wilson or Dr. Pearce appealed the May 5 UR denial.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

In order to grant Mr. Wilson the relief he seeks, the Court must apply the following legal principles. Mr. Wilson bears the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk.

3

Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, he is not required to prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Rather, at an expedited hearing, Mr. Wilson must come forward with sufficient evidence from which this Court might determine that he is likely to prevail at a hearing on the merits. *Id.*

The DCN did not list compensability as a disputed issue, and the parties did not request permission to present additional issues. In light of this, the Court deems compensability of Mr. Wilson's claim to be undisputed. Therefore, Mr. Wilson is not required to make the usual showing that his alleged injury arose primarily out of and in the course and scope of his employment, as required by Tenn. Code Ann. § 50-6-102(14) (2016).

*Failure to Appeal Utilization Review*

The Court will first address Dixie Produce's argument that the Court must deny Mr. Wilson's surgical request because neither he nor Dr. Pearce appealed the most recent UR denial as of the filing of the Request for Expedited Hearing. The Court respectfully disagrees with Dixie Produce's position. Instead, the Court finds it has authority to review the medical evidence in this case and determine whether it supports a finding that Mr. Wilson is entitled to the recommended surgery.

In so finding, the Court notes it has "original and exclusive jurisdiction over all contested claims for workers' compensation benefits when the date of the alleged injury is on or after July 1, 2014." Tenn. Code Ann. § 50-6-237 (2016). Likewise, the Court has statutory authority under Tennessee Code Annotated section 50-6-238(a)(3), "to hear and determine claims for compensation, to approve settlements of claims for compensation, to conduct hearings, and to *make orders, decisions, and determinations.*" (Emphasis added). Accordingly, the Court finds it has statutory power to review the medical evidence in this case.

Further, this Court finds the common law to be instructive. In *Kilgore v. NHC Healthcare*, 134 S.W.3d 153 (Tenn. 2004), our Supreme Court addressed an employer's argument that an appeal to the Medical Director was the exclusive remedy to overturn a UR denial. The Court noted such argument was "not supported by the plain and ordinary meaning of section 50-6-124(d)," which reads, then and now, as follows:

> Nothing in this section shall prevent an employer from electing to provide utilization review; however, if the employee, provider or any other party not contractually bound to the employer's utilization review program disagrees with that employer's utilization review, then that employee, provider or other party *shall have recourse* to the commissioner's utilization review program, as provided for in this section.

4

*Id.* at 158. (Emphasis added.)

In *Kilgore*, the Court found the term "shall have recourse" means a party *can* seek administrative review; however, seeking administrative review "does not replace or limit judicial review." *Id.* The statute did not provide that administrative appeal was the "sole or exclusive means of appealing an employer's [UR] decision, nor [did] the statute state that seeking recourse [within the UR system] is a condition to appealing to the court that had jurisdiction" of the case. *Id.* Therefore, while Mr. Wilson may seek review of the UR denial by the Medical Director, the Court holds it is not a prerequisite for seeking judicial review in this Court.

*Presumption of Medical Necessity*

Next, the Court must consider whether Dixie Produce rebutted the applicable presumption of medical necessity attached to Dr. Pearce's surgical recommendation. After review of the evidence, the Court holds that it has not done so.

Tennessee Code Annotated 50-6-204(a)(3)(H) provides a presumption of medical necessity for "any treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable."[1] Further, this presumption of medical necessity is rebuttable by a preponderance of the evidence.

In addition to the presumption of medical necessity provided in Tennessee Code Annotated 50-6-204(a)(3)(H), the Tennessee Workers' Compensation Appeals Board provided guidance in *Morgan v. Macy's, et al.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *13 (Aug. 31, 2016), regarding the recently-adopted medical treatment guidelines set forth in the ODG. It cited Tennessee Code Annotated section 50-6-124(h) (2016) as follows: "Any treatment *that explicitly follows the treatment guidelines* adopted by the administrator or *is reasonably derived therefrom*, including allowances for specific adjustments to treatment, shall have a presumption of medical necessity for utilization review purposes." (Emphasis added.) The Appeals Board explained that "if an employee does not establish the criteria [set forth in 50-6-124(h)], the employer has the burden to overcome the presumption of favor of medical necessity of the authorized physician's recommended treatment by a preponderance of the evidence." *Id.* at *18.

Shortly after the Appeals Board issued its opinion in *Morgan*, it provided further guidance in *Venable v. Superior Essex, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 56 (Nov. 2, 2016). In *Venable*, the Appeals Board found "it was within the scope of the trial court's authority to assess the validity of the utilization review reports and determine the relative weight to be given those physicians' opinions as well as other expert medical

---

[1] In their briefs, both parties repeatedly refer to Dr. Roberts and Dr. Pearce as authorized physicians. Likewise, the Petition for Benefit Determination reflects that Mr. Wilson selected Dr. Pearce from a panel of physicians. Further, neither side contested that Dr. Roberts and Dr. Pearce are authorized physicians within the meaning of Tennessee Code Annotated section 50-6-204 (2016).

opinions." *Id.* at *9. As explained by the Appeals Board, a trial court can assess the weight to give to a UR report against a competing medical opinion as long as the medical proof consists of more than a trial court's independent assessment of the employee's medical records. *Id.* at *11-12.

Here, there is no evidence that Dr. Pearce "explicitly follow[ed] the treatment guidelines," so Dixie Produce has the burden to rebut the presumption of medical necessity of the recommended surgery by a preponderance of the evidence. *Morgan*, at *17-18. A preponderance of the evidence standard requires that the truth of the facts asserted be more probable than not. *Teter v. Republic Parking Sys.,* 181 S.W.3d 330, 341 (Tenn. 2005). With that in mind, the Court will consider the medical evidence.

In the present case, Dr. Pearce disputed Dr. Goldstein's findings. First, Dr. Pearce disagreed with Dr. Goldstein's opinion that no significant objective findings existed to warrant the recommended surgery. Dr. Pearce testified that the two MRIs show objective evidence of "anatomic changes" that may be producing Mr. Wilson's symptoms. Further, the NCS showed objective evidence of L5 nerve root irritation. He also stated that Mr. Wilson's symptoms are consistent with the objective diagnostic findings.

Next, the Court considers Dr. Goldstein's opinion that conservative treatment was not exhausted. The September 21, 2016 UR report reflects Dr. Goldstein reviewed Mr. Wilson's records for twenty physical therapy visits. As to other conservative treatment, Dr. Pearce stated Mr. Wilson took anti-inflammatories, had multiple epidural steroid injections, and was restricted from working. However, Dr. Pearce recommended surgery to Mr. Wilson because "he had failed conservative management." Additionally, the Court notes that Dr. Goldstein considered 268 pages of medical records, including diagnostic tests and physical therapy records, for the first UR he performed. For the second UR performed by Dr. Goldstein, he only considered thirty-seven pages of records, which did not include any of the diagnostic tests or physical therapy records.

Lastly, the Court considers the lack of a psychosocial assessment, which was the second basis relied upon by Dr. Goldstein to non-certify the recommended surgery. Dr. Pearce testified he had intended to order the psychological assessment until an adjuster for Dixie Produce advised his office that ordering it would not change its decision to deny the surgery. Nevertheless, Dr. Pearce testified that he remained willing to order the psychological assessment.

In summary, the Court finds that Dr. Pearce addressed each of Dr. Goldstein's objections to the recommended surgery with objective recitations to Mr. Wilson's medical records. The Court also finds that Dr. Goldstein failed to consider all of Mr. Wilson's medical records when he performed the second UR. For these reasons, the Court gives the greater weight to the opinions of Dr. Pearce on the issue of medical necessity for the recommended surgery.

6

After considering the foregoing, the Court holds that Dixie Produce failed to rebut the presumption of correctness afforded to Dr. Pearce's opinion by Tennessee Code Annotated section 50-6-204(a)(3)(H) (2016). Accordingly, the Court holds Mr. Wilson is likely to prevail at a hearing on the merits in proving that he is entitled to the requested surgery despite the UR denials.

**IT IS, THEREFORE, ORDERED** as follows:

1. Upon receipt of Dr. Pearce's order for the psychological assessment, Dixie Produce shall promptly authorize and schedule same. Medical care for Mr. Wilson's injuries shall be paid, and Dixie Produce or its workers' compensation carrier shall provide Mr. Wilson with medical treatment for those injuries as required by Tennessee Code Annotated section 50-6-204(2016), to include the back surgery recommended by Dr. Pearce. Medical bills shall be furnished to Dixie Produce or its workers' compensation carrier by Mr. Wilson or the medical providers.

2. This matter is set for a Status Hearing on Thursday, September 7, 2017, at 10:00 a.m., ET. You must call 423-634-0164 or toll-free at 855-383-0001 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 7th day of July, 2017.**

_Audrey Headrick_
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

7

# APPENDIX

The Court reviewed the entire case file, as listed in the docketing notice, in reaching its decision. Specifically, the Court reviewed the following documents, marked as exhibits for ease of reference:

Exhibits:

1. Plain and Concise Statement of Michael Wilson
2. Spine Surgery Associates Surgery Scheduling
3. First Report of Injury
4. Deposition of Richard Garfield Pearce, M.D.
5. Wage Statement
6. Panel
7. Medical records of Dr. Alexander Roberts (December 18, 2015; August 25, 2015; September 25, 2015; and, June 20, 2016)
8. August 23, 2016 office note of Dr. Richard Pearce
9. Cumulative Utilization Review documents:
   a. Correspondence from Dr. Robert Snyder to Mr. Wilson dated October 19, 2016
   b. Utilization Review dated May 5, 2017
   c. Notice of Appeal Rights for a Utilization Review
   d. Memorandum regarding Utilization Review Appeal (incorrectly dated October 19, 2017)
   e. Utilization Review dated September 21, 2016
10. Medical records of Chattanooga Outpatient Center

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response to Request for Expedited Hearing
5. Docketing Notice for On-The-Record Determination
6. Employer's Response to Request for Expedited Hearing
7. Employee's Response to Employer's June 2, 2017 Filing
8. Employee's Response to Employer's Response Requesting Expedited Hearing
9. Defendant's Reply to Plaintiff's Response to Employer's Response to Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of July, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| Michael A. Wagner, Employee Attorney | | | X | maw@wagnerinjury.com |
| Nicholas S. Akins, Employer Attorney | | | X | nakins@morganakins.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9